## Commonwealth *v.* Meinhart, Appellant.

496

Argued March 17, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*John Deutsch,* for appellant.

*Harold B. Bornemann,* with him *George Brinley Richards, Carl A. Niehoff,* District Attorney, *Charles C. Hileman, III,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY ROSS, J., July 14, 1953:

On June 10, 1952 appellant, Kenneth Meinhart, with co-defendant Cletus Schlier, was tried in the Court of Quarter Sessions of Carbon County on two counts of an indictment charging larceny of, and malicious mischief to, certain property of the Lehigh Coal & Naviga-

tion Company. The jury rendered a verdict of acquittal on the count of malicious mischief but convicted appellant on the count of larceny of fixtures under §813 of The Penal Code (Act of June 24, 1939, P. L. 872, 18 PS §4813). Appellant's motion for a new trial and arrest of judgment was denied by the court below and sentence was imposed on the verdict on November 21, 1952, from which judgment of sentence he has appealed to this Court.

Section 813 of the statute provides: "Whoever steals or rips, cuts or breaks, with intent to steal, any glass or woodwork belonging to any building, or any lead, iron, copper, brass or other metal, or any utensil or fixture whether made of metal or other material, fixed in or to any building, or anything made of metal fixed in any land, being private property, or used for a fence to any dwelling house, garden or area . . . is guilty of larceny, a felony . . ."

The subject of larceny in this case was a quantity of cast iron in the form of wickets which constituted a part of the locks of a canal of the Lehigh Coal & Navigation Company, located some distance from Lehigh Gap. Appellant and Schlier admittedly, on June 21, 1951, went to the locks, removed the wickets, loaded the "scrap iron" into Schlier's automobile, drove it to Dieter's foundry at Cherryville, Northampton County, where Schlier sold it for $32, and divided the proceeds between them. The cancelled check in the amount of $32 was admitted in evidence. A great deal of corroborative evidence appears of record which, in view of appellant's admissions, we deem unnecessary to set forth in detail.

Appellant contends that because the wickets were part of the locks, embedded in the timber of the locks, they were not "fixed to or in any building" within the meaning of the Act, and we agree. Further, he argues,

not being attached to the soil, they were not "anything made of metal fixed in any *land*". In support of his theory he cites the Statutory Construction Act of May 28, 1937, P. L. 1019, §58 of which (46 PS §558) provides that penal laws are to be strictly construed. So construed, he argues, land means soil or ground only and its meaning is not to be expanded to denote realty. He contends that any other construction is inconsistent with the sense in which land is commonly defined, quoting *Com. v. Bay State Milling Co.*, 312 Pa. 28, 167 A. 307, wherein the Court stated at page 31: " 'Statutes are presumed to employ words in their popular sense, and when the words used are susceptible of more than one meaning, the popular meaning will prevail.' "

We think the Legislature did not intend to restrict the meaning of "land" to the narrow sense contended for. In construing a statute the courts look to the background of its enactment, the reason why it came into being, the mischief it was designed to correct, and the object to be attained. See *Com. v. Emerick*, 373 Pa. 388, 96 A. 2d 370. The sanctions of section 813 are a substantial re-enactment of section 106 of the Act of March 31, 1860, P. L. 382, which did not make the offense a felony but prescribed a penalty of fine and imprisonment. That Act superseded the common law, under which real property was not a subject of larceny. It was not larceny, for example, to sever timber from trees, or anything attached to real property, if the severance and asportation were accomplished by one continuous act—this for the reason that upon severance the property was converted into personalty within the possession of the wrongdoer, who committed no trespass de bonis asportatis by taking from his own possession. Larceny is a wrong against possession, and every common-law larceny contains within it a tres-

pass de bonis asportatis. That vital element being absent, thieves who severed and carried away things attached to real property by one continuous act escaped criminal liability on a technicality. This was the evil which the statute was designed to correct. A thief, under this section, was no longer free to sever woodwork or metal fixtures from public or private realty and escape with civil liability only. To hold that cast iron fixtures on a canal lock may be severed, carried away and appropriated to the taker's own use with impunity insofar as criminal liability is concerned, simply because they were attached not directly to the soil but to timbers which were, would be to revert to the ancient evil of common-law technicality.

Appellant's contention that the Commonwealth failed to prove ownership of the property in question by the navigation company requires little discussion. Corporate records establishing ownership were admitted in evidence. In addition, Wilbur J. Klein, maintenance man for the company, testified that he made periodic inspections of the locks. The record contains ample evidence of possession by the private prosecutor, which possession in turn is sufficient proof of ownership as against a wrongdoer charged with theft. *Com. v. Schultz,* 168 Pa. Superior Ct. 435, 441, 79 A. 2d 109; *Com. v. Goodelman,* 74 Pa. Superior Ct. 526, 527; *Com. v. Burke,* 74 Pa. Superior Ct. 320, 322.

Appellant next assigns as error the refusal by the trial judge of his sixth point for charge, viz., "That if the jury believe that the defendants took the property, i.e., the scrap iron, involved, under a mistaken belief that the same was abandoned the jury must acquit the defendants." There is merit in this contention and the case must be retried.

Nowhere in The Penal Code is larceny defined. Hence the common-law definition applies. *Com. v.*

*Doran,* 145 Pa. Superior Ct. 173, 20 A. 2d 815. One of the elements of larceny is a specific intent to steal (animus furandi)—an intent to convert the goods wrongfully to the taker's own use or permanently deprive the owner of their possession. Moreover, since larceny is a crime against possession, in order to sustain a conviction of larceny it must appear not only that there was a wrongful caption and asportation of the goods by the defendant, with specific criminal intent, but that the property itself was the subject of larceny. Abandoned property does not so qualify. It belongs to no one, nor is it regarded as being in the possession of anyone. Because there is no property right in it in anyone it cannot be the subject of larceny. Hence, in the present case, if the locks were abandoned, no crime was committed. Appellant testified that the lock was in a dilapidated condition and that the beds were rotten and disintegrating. Photographs admitted in evidence were strongly corroborative of this statement. He further testified that he did not know the property belonged to the navigation company and that had he known he would not have taken the cast iron. A bona fide, reasonable mistake of fact will negative criminal intent provided the actor would have been justified in his action had the facts really been as he supposed they were. *Com. v. Lefever,* 151 Pa. Superior Ct. 351, 30 A. 2d 364. Whether appellant's testimony was credible and his misapprehension reasonable under the circumstances was a matter for determination of the jury and he was entitled to an affirmance of his sixth point for charge, since criminal intent was at issue.

Judgment reversed with a venire facias de novo.