447 A.2d 1012

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Thomas J. WETMORE.**

Superior Court of Pennsylvania.

Argued Jan. 25, 1982.

Filed July 9, 1982.

Stephen B. Harris, First Assistant District Attorney, Doylestown, for Commonwealth, appellant.

Edward C. Connolly, Warminster, for appellee.

Before WIEAND, CIRILLO and POPOVICH, JJ.

CIRILLO, Judge:

Appellee, Thomas J. Wetmore, was convicted in a jury trial of theft by deception[1] and theft by unlawful disposition.[2] After argument, the trial court granted appellee's motion in arrest of judgment and ordered him discharged. The Commonwealth has appealed that order to this court.

In 1974, an 18 year old man committed suicide. Appellee, who was then chief of police in the community, investigated the suicide and recovered a shotgun which was the suicide weapon. The following day, appellee met with the suicide's father who requested that appellee destroy or otherwise dispose of the shotgun. Appellee agreed to do so. Appellee later wrote a letter to the father, indicating that he had disposed of the gun. Approximately one year later, appellee took the shotgun to a gun shop where he disposed of it for no compensation.

1. 18 Pa.C.S.A. § 3922.

2. 18 Pa.C.S.A. § 3927.

The Commonwealth argues that the trial court erred in concluding that the shotgun had been abandoned by the father and therefore could not be the subject of a larceny. We disagree and affirm the order of the lower court arresting judgment on both charges and discharging appellee.

█ It is well settled law that abandoned property cannot be the subject of larceny. *Commonwealth v. Meinhart*, 173 Pa.Super. 495, 98 A.2d 392 (1953). Abandoned property is defined as that:

> ... to which an owner has voluntarily relinquished all right, title, claim and possession with the intention of terminating his ownership, but without vesting it in any other person and with the intention of not reclaiming further possession or resuming ownership, possession or enjoyment.

1 Am.Jur.2d § 1; *Ballantine's Law Dictionary*, Lawyers Co-operative Publishing Co., Third Edition, p. 1 (1969).

█ Abandonment involves an intention to abandon, together with an act or omission to act by which such intention is apparently carried into effect. In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry, for there can be no abandonment without the intention to abandon. *Black's Law Dictionary*, West Publishing Co., Fifth Edition, p. 2 (1979). The intent to abandon is to be determined from all of the facts and circumstances of the case. *Russell v. Stratton*, 201 Pa. 277, 50 A. 975 (1902). The question of whether a particular act amounts to an abandonment is generally one of intention. *Eagan v. Nagle*, 378 Pa. 206, 106 A.2d 222 (1954). When deciding whether an object has been abandoned, we must consider the nature of the property, the acts and conduct of the parties in relation thereto and the other surrounding circumstances. *Gilberton Contracting Co. v. Hook*, 255 F.Supp. 687 (E.D.Pa.1966).

█ In the instant case, an abandonment occurred when the father requested appellee to destroy or otherwise dispose of the gun so it would never be used again for any purpose.

As noted above, appellee obtained the gun when he was investigating the suicide. When appellee met with the father, the father told him to keep and dispose of the gun, rather than return it. Though one could argue that no delivery was made and, therefore, no physical act, we conclude that the omission to act, i.e., the father's failure to recover the gun from the appellee, together with an intent to relinquish all claim to the property, both presently and in the future, was sufficient because the effect was the same. We would not expect the parties to go through the unnecessary motion of the physical transfer of the gun from appellee to the father and then its return to appellee, just to satisfy the requirement that a physical act take place. The moment the father told appellee to keep and dispose of the gun, he gave up his rights of possession and ownership. He did not intend to reserve any interest in the gun and, therefore, he clearly intended to abandon it.

Even if we assume that the gun was not abandoned property and, therefore, was a proper subject of larceny, we still must reach the same result because the Commonwealth failed to prove essential elements of the crimes charged.

▪ Theft by deception is defined in Section 3922 of the Crimes Code as follows: "A person is guilty of theft if he intentionally obtains or withholds property of another by deception." It is clear from the record that appellee obtained possession of the gun in the ordinary course of investigating the suicide. The alleged promise to dispose of the gun was made after appellee had the gun in his possession. Therefore, there is no evidence that the appellee "obtained" the gun by deception.

Furthermore, appellee did not "withhold" the gun by deception. "Withhold" is not defined in the Crimes Code but has been defined as, "to retain in one's possession that which belongs to or is claimed by another." *Ballantine's Law Dictionary*, Lawyer's Co-operative Publishing Co., Third Edition, p. 1373 (1969). Possession of the gun had been voluntarily relinquished by the father and he made no effort to reclaim possession. We conclude, therefore, that

appellee was improperly convicted of theft by deception and judgment was correctly arrested on that charge.

Theft by failure to make required disposition has four elements:

1) the obtaining of property of another;

2) subject to an agreement or *known legal obligation* upon the recipient to make specified payments or other disposition thereof;

3) intentional dealing with the property obtained as the defendant's own; and

4) failure of the defendant to make the required disposition of the property.

(emphasis added). *Commonwealth v. Shapiro*, 275 Pa.Super. 28, 418 A.2d 594 (1980); *Commonwealth v. Austin*, 258 Pa.Super. 461, 393 A.2d 36 (1978); *Commonwealth v. Crafton*, 240 Pa.Super. 12, 367 A.2d 1092 (1976).

A review of the evidence reveals that the first, third and fourth elements are present. As to the second element, we find that there was no clear legal duty owed by appellee to dispose of the gun in a particular manner. Appellee had promised to destroy the gun, as a favor, to the father, and he failed to do it. Though appellee's conduct may be considered immoral, it was not illegal and, therefore, does not fall within the purview of Section 3927 of the Crimes Code. We agree with the lower court's analysis of why the Commonwealth must fail in its attempt to bring this "agreement" within the confines of this statute:

The prosecution must fail because in our view the statute was not intended by the legislature to cover this "borderline" case that falls between the cracks only because in the most narrow sense its operative facts can be squeezed to fit the bare words of the statute.

Bare words are not enough. Involved is the community sense of what is criminal and it is our intuition that society did not intend to punish what in the last analysis has to be viewed as the breach only of a moral obligation.

Consequently, we conclude that, under either theory presented above, appellee was improperly convicted of the crimes charged and the lower court appropriately arrested judgment and discharged the appellee.

Order affirmed.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent. A shotgun delivered to a policeman for the express purpose of destruction has not been abandoned by the owner and can properly be the subject of theft by failure to make required disposition. Therefore, I am of the opinion that the majority incorrectly affirms an order setting aside a conviction where the evidence shows that a policeman retained such a gun, used it for his own purposes, and after a year delivered it to a gun shop for sale in the normal course of business.

The shotgun which was the subject of the instant proceedings had been used in a suicide in New Britain Township, Bucks County, on October 17, 1974. The father of the victim delivered the shotgun to the appellee, Thomas Wetmore, who was then the township chief of police, with specific instructions to destroy the gun so that it could never again be used by anyone for any purpose whatsoever. Appellee advised the father on several occasions, both orally and in writing, that he had carried out these instructions. In fact, he had not done so. He retained possession of the shotgun, carried it in his car for a year, and ultimately turned it over to a local gun shop, which sold it in the normal course of business.

Appellee was tried by jury and convicted of theft by deception[1] and theft by failure to make required disposition.[2] The trial court subsequently granted appellee's mo-

1. 18 Pa.C.S. § 3922.

2. 18 Pa.C.S. § 3927.

tion in arrest of judgment.[3]  No determination was made of a motion for new trial which had also been filed.  From the order arresting judgment, the Commonwealth appealed.

Theft by failure to make required disposition is defined at 18 Pa.C.S. § 3927(a), where it is provided in relevant part as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition . . . is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payments or disposition . . . .

The offense, derived from the Model Penal Code, has four elements:  (1) the obtaining of property belonging to another;  (2) an agreement or known legal obligation to make a specified disposition;  (3) an intentional dealing with the property as one's own;  and (4) a failure to make the required disposition.  *See Commonwealth v. Crafton*, 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094–95 (1976).

A review of the evidence in the instant case discloses that these four elements were present in and a part of appellee's conduct.  He obtained the property of another subject to an express agreement to dispose of it by destruction;  however, he dealt with it as his own and failed to make the required disposition.

I am unable to agree with the majority that the gun had been abandoned when the offense was committed.  "Abandoned property" has been defined as "that to which [the] owner has relinquished all right, title, claim and possession,

---

**3.**  Theft by deception can be committed only by one who "obtains or withholds property of another by deception."  18 Pa.C.S. § 3922(a). In this case, there is no evidence that appellee "obtained" the gun by deception.  Moreover, he did not "withhold" the gun.  "Withhold" is defined in Black's Law Dictionary (5th ed. 1979), as "[t]o retain in one's possession that which belongs to or is claimed or sought by another."  Possession of the gun in the instant case had been surrendered, and there was no effort to re-claim such possession by the person or persons having rights of ownership therein.  The offense, if any, lay in the failure to dispose of the gun as instructed.  Therefore, I agree with the majority that judgment was properly arrested on the conviction for theft by deception.

with intention of not reclaiming it or resuming its ownership, possession or enjoyment." For property to be abandoned, there must be the concurrence of a physical act, such as a throwing away of property, and the intention of not reclaiming it. See Black's Law Dictionary (5th ed. 1979). When the gun was delivered to appellee an abandonment had not occurred. The physical act of abandonment, i.e., the destruction of the gun, was to be effected by appellee. Until he destroyed the gun, it could be reclaimed by the owner. Until rendered inoperable by appellee, the weapon was not available for appropriation by the next comer; appellee was merely a bailee, an agent authorized to make disposition as directed by the owner.

In this respect, the facts are not analogous to the throwing away of garbage. Rather, they are similar to the situation in which a desk is to be delivered to a charity or where a rabid dog is delivered to a game warden for destruction. In these situations, a relinquishment of the rights of ownership does not occur until the desk has been delivered or the dog has been put to sleep. Where an item of property has been delivered to another for purposes of destruction, there is no abandonment until the property has been destroyed. If the bailee does not destroy the property and keeps it for his own use, he can be prosecuted for theft by unlawful disposition.

It may be, as appellant contends and the majority concludes, that considerations other than are apparent in the instant case prompted the legislature to define theft in the manner of 18 Pa.C.S. § 3927(a). This argument, however, does not alter the fact that the conduct attributed to appellee by the Commonwealth's evidence in this case is precisely what has been made criminal by the legislature. If the result seems undesirable, that is an argument to be made to the legislature.

Accordingly, I would reverse the order arresting judgment on the conviction for theft by failure to make required disposition and remand for a determination of appellee's motion for new trial.