J-S03008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TALANA YOUNGER | : | |
| | : | |
| Appellant | : | No. 128 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 1, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005965-2019

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 28, 2023**

Talana Younger appeals her November 1, 2021 judgment of sentence ordering her to pay restitution in the amount of $2,900 after she was found guilty of theft by unlawful taking with respect to money misappropriated from Konnah Kamanda ("the victim"). We affirm.

We glean the factual and procedural history of this matter from the certified record. This appeal centers around the victim's unfortunate trip to a Bank of America branch located at 1600 North Broad Street in the City and County of Philadelphia on June 24, 2019. At approximately 11:30 AM on that day, the victim withdrew a total of $3,000 in cash from her bank accounts. *See* N.T. Trial, 11/01/21, at 14-17. She counted the money, which consisted exclusively of $100 bills, and placed the cash in her pocket. *Id.* at 15, 17, 75. The victim exited the bank and promptly dropped all $3,000 in cash onto the sidewalk outside of the entrance. *Id.* at 18. Before she realized her mistake,

the victim continued walking to her car while Appellant and an individual named Theodore Bell came across the heap of paper bills as they walked past the bank mere seconds later. *Id.* at 74-75. Appellant stopped and began collecting the bills while Mr. Bell stood watch. *Id.* at 74-75, 83, 88.

Upon realizing she had misplaced her money, the victim returned to the scene seconds later and observed Appellant confiscating the money. *Id.* at 83, 88. By this point, Appellant had claimed possession of the lion's share of the cash that was spilled onto the sidewalk such that the victim was only able to recover a single $100 bill. *Id*. at 18, 37. The victim pleaded with Appellant that the rest of the money belonged to her, but her cries fell upon deaf ears as Appellant "immediately started to leave the scene without giving [the victim] an opportunity to present any proof" of her ownership. Trial Court Opinion, 6/30/22, at 3 (citing N.T. Trial, 11/01/21, at 18-26, 76-79, 90).

The victim then initiated a brief struggle with Appellant, which prompted Mr. Bell to intervene and physically restrain the victim so Appellant could flee in her own car. *See* N.T. Trial, 11/01/21, at 18-19, 27-28. Mr. Bell also temporarily snatched the victim's cell phone to prevent her from taking any identifying photographs of Appellant or himself. *Id*. at 23-25. Thereafter, "the couple made no effort to determine who the money belonged to, nor did they contact the bank, police, or any other authority to report the found money. Instead, [Appellant] spent the money." Trial Court Opinion, 6/30/22, at 4 (citing N.T. Trial, 11/01/21, at 80). Despite Mr. Bell's attempts to thwart the taking of any photographic evidence, these events were captured by no

less than seven surveillance cameras installed on the exterior of both the bank and another building across the street. *See id*. at 2.

Appellant was arrested on August 4, 2019, and charged with theft by unlawful taking—movable property and receiving stolen property. She and her co-defendant, Mr. Bell, both waived their right to a jury and proceeded to a bench trial that was held on November 1, 2021. During this proceeding, the trial court also had the benefit of the above-noted surveillance footage. *See* N.T. Trial, 11/01/21, at 53. After taking the matter under advisement, the trial court found Appellant guilty of theft by unlawful taking and not guilty of receiving stolen property. *See* N.T. Hearing, 11/12/21, at 5. On December 1, 2021, Appellant was sentenced to pay restitution to the victim in the amount of $2,900 to the victim with no further penalty imposed. *See* N.T. Sentencing, 12/1/21, at 21. No post-sentence motions were filed.

On December 28, 2021, Appellant filed a timely notice of appeal. All parties have timely complied with the respective requirements of Pa.R.A.P. 1925. Appellant has raised three issues for our consideration:

> 1) Was the evidence insufficient to sustain the guilty verdict for theft by unlawful taking, 18 Pa.C.S. § 3921(a), where there was insufficient evidence to prove that Appellant knew the money belonged to [the victim] or that Appellant specifically intended to unlawfully deprive [the victim] or anyone of the money, and where the events that transpired were a mere misunderstanding rather than criminal in nature?
>
> 2) Was the evidence insufficient to sustain the guilty verdict for theft by unlawful taking, 18 Pa.C.S. § 3921(a), where the evidence established that $1,000 was found by Appellant, not $3,000 or $2,900, therefore the theft by unlawful taking

graded as [a third-degree felony] was not proven beyond a reasonable doubt?

3) Did the trial court err in ruling Appellant guilty of theft by unlawful taking, as Appellant presented substantive evidence of her reputation for being peaceful, law-abiding and honest, which by itself, raised a reasonable doubt and warranted a verdict of not guilty?

Appellant's brief at 7.

Appellant's first two issues facially constitute challenges to the sufficiency of the Commonwealth's evidence. *See* Appellant's brief at 12. In reviewing these arguments, we bear the following legal principles in mind:

> Our standard of review in assessing whether sufficient evidence was presented to sustain a defendant's conviction is well-settled. The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying this test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Boyer*, 282 A.3d 1161, 1171 (Pa.Super. 2022) (cleaned up). A challenge to the sufficiency of the evidence presents a question of law,

and consequently, is subject to plenary review under a *de novo* standard. **See**

**Commonwealth v. Smith**, 234 A.3d 576, 581 (Pa. 2020).

As noted above, Appellant was convicted of a specific subsection of theft by unlawful taking pertaining to movable property, which offense is defined as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). In pertinent part, Appellant does not dispute absconding with the victim's money and spending it without regard to its provenance. Instead, she asserts that the evidence was insufficient to establish her intent to deprive the victim of her money. **See** Appellant's brief at 14 ("The evidence did not prove that [Appellant] intended to deprive a rightful owner of the money."). Pennsylvania law provides that "to be guilty of theft under this definition, the actor's intention or conscious object must be to take unlawfully the property of another for the purpose of depriving the other of his or her property." **Commonwealth v. Dombrauskas**, 418 A.2d 493, 496-97 (Pa.Super. 1980). However, such intent may be established by purely circumstantial evidence alone. **See Boyer**, **supra** at 1171.

Appellant's argument is essentially that she had no way of identifying the rightful owner of the cash that she found on the sidewalk. **See** Appellant's brief at 14 ("[A]ppellant came upon the money on the sidewalk that was not in any bank envelope, that had no indicia of belonging to any one, and from whom she did not see it drop."). In the absence of such knowledge, Appellant

seems to contend that she was entitled to simply keep the money for her own purposes. *Id*. at 15 (arguing that since it was "impossible" to "reasonably ascertain" the "rightful owner of the money" that Appellant's actions were reasonable and not criminal). We must disagree.

While Appellant may not have possessed actual knowledge of the victim's ownership rights in the moment, the issue in this matter is **her** arguable entitlement to the money and not the victim's ownership. Overall, Appellant has proffered no arguable basis upon which she, herself, had some legitimate claim of entitlement to the money. *See*, *e.g.*, *Hamaker v. Blanchard*, 90 Pa. 377, 377 (Pa. 1879) ("The finder of lost property has a valid claim to the same against all persons but the true owner[.]").

There is no reasonable question as to whether the at-issue cash rightfully belonged to the victim given the overwhelming and definitive evidence at trial. The victim directly testified regarding her withdrawal of the money. *See* N.T. Trial, 11/1/21, at 14-15. In corroboration of her claim, the Commonwealth entered into evidence withdrawal slips confirming that the victim had withdrawn a total of $3,000 in cash from her bank accounts on the day in question. *Id*. at 16-17. Finally, contemporaneous surveillance footage depicted the money in the victim's actual possession until it fell from her pocket. *Id*. at 20-22. Moreover, there is no indication that the victim had abandoned the money in a fashion that would have precluded a larceny conviction under these circumstances. *See, e.g., Commonwealth v.*

*Wetmore*, 447 A.2d 1012, 1014 (Pa.Super. 1982). To the contrary, the victim returned to the scene of her monetary mishap mere seconds after it occurred and openly declared her ownership rights.

Viewed in the light most favorable to the Commonwealth, the evidence at trial established that Appellant acted with clear contempt as to the rightful owner of the $2,900 in cash she found on a sidewalk. She made no efforts to find this person, ignored the victim's protestations, fled from the scene in a matter of moments, and spent the money for her own benefit. Thus, here is no dispute that Appellant took possession of money that she had no rightful claim to and retained it for her own benefit. These actions are sufficient to establish the requisite intent for theft by unlawful taking. *See Dombrauskas*, *supra* at 496-97; *see also, e.g., Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa.Super. 2008) ("[T]he fact-finder is free to conclude the accused intended the natural and probable consequences of [her] actions[.]").

We now turn to Appellant's second claim for relief, which concerns the grading of her conviction. Specifically, Pennsylvania law provides that a theft offense "constitutes a felony of the third degree if the amount involved exceeds $2,000[.]" 18 Pa.C.S. § 3903(a.1). As noted above, both the victim's testimony and her withdrawal slips from the bank indicate that she was carrying a total of $3,000 at the time of the underlying events in this case. *See* N.T. Trial, 11/1/21, at 14-17, 20-22. Furthermore, the victim testified that she dropped all her money and was only able to recover a single $100

bill. *See id*. at 37. This information was further corroborated by the surveillance videos adduced by the Commonwealth at trial, which depicted Appellant successfully taking all the bills that fell to the ground from the victim's pocket, except for the single bill retrieved by the victim. *Id*.

Viewing this information in the light most deferential to the Commonwealth, we find that it is sufficient to establish that the amount involved in this criminal matter exceeded $2,000. *See Commonwealth v. Hanes*, 522 A.2d 622, 626 (Pa.Super. 1987) ("The Commonwealth is not required to establish the **precise** market value of the stolen property. Rather, the Commonwealth must present evidence from which a reasonable jury may conclude that the market value was at least a certain amount." (emphasis in original)). We recognize that Appellant testified that she only recovered $1,000 from the sidewalk. *See* N.T. Trial, 11/01/21, at 79-80. However, the fact-finder was fully empowered to disbelieve Appellant's testimony. *See Boyer*, *supra* at 1171. Thus, no relief is due on this claim.

Finally, in her third claim Appellant submits that evidence of her good character should have resulted in a judgment of acquittal. *See* Appellant's brief at 20 ("The trial court erred in ruling [Appellant] guilty of the theft charge, as [Appellant] introduced substantive evidence of having a reputation in the community for being peaceful, law-abiding and honest."). Specifically, there was a stipulation at trial between the parties that Appellant's brother spoke in support of her "excellent reputation" for being peaceful, law abiding,

and honest. *See* N.T. Trial, 11/01/21, at 72-73. Thus, Appellant argues that this stipulated testimony, alone, should have overmastered the entirety of the Commonwealth's evidence at trial. We disagree.

As a general matter, it is well-established that "[e]vidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all the evidence presented in the case on the general issue of guilt or innocence." *Commonwealth v. Hull*, 982 A.2d 1020, 1023 (Pa.Super. 2009) (cleaned up); *see also* Pa.R.E. 404(a)(1). Indeed, "[e]vidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa.Super. 2001). Like any other piece of testimony entered at trial, however, the fact-finder has unfettered discretion to reject such attestations in favor of contrary evidence speaking to a defendant's guilt. *See Boyer*, *supra* at 1171.

However, we discern that Appellant's argument on this point is not grounded in sufficiency of the evidence but actually concerns the weight of the evidence. *See Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 ("An argument that the finder of fact should have credited one witness'[s] testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence."). Instantly, Appellant is directly contending that the trial court should have credited her brother's stipulated

testimony over the other evidence at trial. To the extent that Appellant seeks to challenge the weight of the evidence at trial on such grounds, this claim is waived due to her failure to preserve it in the trial court. **See Commonwealth v. Cox**, 231 A.3d 1011, 1018 (Pa.Super. 2020) ("[A] weight challenge must be preserved either in a post-sentence motion, a written motion before sentencing, or orally prior to sentencing. . . . An appellant's failure to avail himself of any of the prescribed methods . . . constitutes waiver of that claim."); Pa.R.Crim.P. 607(A)(1)-(3).

Furthermore, even if this claim were properly before us in the context of sufficiency, the factual evidence of Appellant's guilt in this matter was overwhelming and consisted of physical evidence, eyewitness testimony, and exacting video footage of the underlying events. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/2023